McBRIDE, Judge.
This is a suit brought on behalf of a minor for damages for the alleged tortious death of his father, a 28-year old Negro. The accident occurred about 10:30 a. m., on May 30, 1964, in the inbound roadway of the 6700 block of Chef Menteur Highway. The decedent, a pedestrian, was struck by an automobile proceeding toward New Orleans which was being driven by John R. Owens, age 19. The suit is directed at the liability insurer of said automobile. After a trial in the court below the suit was dismissed and the plaintiff has prosecuted the instant appeal.
Defendant, in answer, denied negligence on the part of the driver of the insured automobile and alternatively charges decedent with several specifications of contributory negligence among which was his attempt to cross the highway illegally, his failure to see what he could or should have seen, his removing himself from a position of safety and placing himself voluntarily into a position of peril, and his failure to permit oncoming automobiles to pass before attempting a crossing of the highway.
This is one of those instances where the court finds it expedient to pretermit the question of negligence on the part of the driver of the automobile because the case may be adjudicated solely on the issue of decedent’s contributory negligence.
At the time of the accident young Owens, as the good Samaritan, was conveying a young man who had been bitten by a snake to a hospital in New Orleans. There is no question that Owens was exceeding the speed limit of 40 miles per hour prevailing at the locus in quo.
The trial judge in finding as a fact that the deceased pedestrian was guilty of contributory negligence, stated in his comprehensive reasons for judgment the following:
“From an examination of the testimony which the Court believes it appears that the decedent was standing either on the curb of the neutral ground or immediately adjacent to the curb of the neutral ground in the first lane of traffic; it appears further that the driver of the vehicle was proceeding in the middle lane of traffic at a fast rate of speed, with his hand on his horn, giving notice to the entire public that he was violating the law and proceeding at an excessive rate of speed.
“The driver of the vehicle first noticed the decedent when he was approximately two blocks away, but he only noticed that the decedent, with others, was standing still, either on the neutral ground or immediately adjacent to the neutral ground. He proceeded at the same rate of speed for a very short period of time, but still blowing his horn continuously and loudly.
“It was only when he reached a point of sixty or seventy feet away from the *397 point where the decedent stood that he, as well as the other occupant of the vehicle, noticed that the decedent did not remain in his position hut started into the second lane of traffic.
“Immediately, according to the testimony of the defendant’s witnesses, whom the Court believes, he sought to apply his brakes and swerve his car in order to avoid hitting the pedestrian.
“It is the Court’s opinion that the decedent was negligent in several respects. The decedent did violate the law, specifically LSA-R.S. 32:213, in that he proceeded to cross the roadway at a point other than a marked crosswalk or at an intersection.’ The Court believes that this was negligence * * * and the only questionto determine is whether that particular negligence contributed to the resulting accident.
“The pedestrian decedent was further negligent in failing to see the approaching vehicle or failing to heed the warning which the approaching vehicle gave. It appears that the decedent could have seen that this vehicle was proceeding at an excessive rate of speed and the decedent should have noticed that the vehicle was violating the law, had he but observed, which he was always under a duty to do, he would have ascertained that he could not have negotiated that street in sufficient time to avoid the approaching vehicle.
“The Court is of the opinion that the several acts, hereinabove set out, were directly contributory factors to the resulting accident.”
We approve of and adopt the above comments extracted from the reasons for judgment as part of our opinion.
The driver of the automobile testified that when the car was within 60 to 70 feet from the point of impact the decedent, from his stopped and safe position, started walking into the inner lane in which the automobile was traveling and that it was then too late to take any effective steps to avoid the accident. Owens states he applied his brakes but to no avail.
The tires of the automobile laid down skid marks as a result of the sudden application of the brakes which commenced 45 feet, 3 inches before reaching the point at which the car hit the pedestrian. We believe the skid marks lend mute corroboration to the driver’s statement that the car was in close proximity to defendant when he attempted his ill-fated entry into the middle lane.
Decedent returned to his home about 2:30 o’clock on the morning of the accident and left it at 7:00 a. m. Just prior to the accident he was in a barroom. In addition to this, 13 red and white capsules, which the investigating police officer referred to as “goof balls,” were found in decedent’s clothing. A toxicologist from the Orleans Parish Coroner’s office gave testimony to the effect that the capsules contained secobarbital and amobarbital, both barbiturates. A blood specimen drawn from decedent indicated a bartibual level of %> of a milligram per cent. On the basis of this finding by the coroner, Dr. Sam Nadler, a specialist in the field of internal medicine, testified that such a percentage “ * * * exceeds the ordinary level that might be expected of an individual who had taken a dose of sleeping pills to sleep that night” and is sufficient to induce sleep. He added that a person under the influence of %o per cent milligrams of barbituates would undoubtedly show a deficiency of performance ability or motor reaction plus a slowing of the mental processes in any endeavor requiring the use of the reflexes.
The decedent’s contributory negligence barring a recovery herein,
The judgment appealed from is affirmed.
Affirmed.